UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SARAH GLISSON, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) CAUSE NO: 1:22-cv-1142 ) |
| RICHMOND BAKING CO., | ) ) |
|     Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiff, Sarah Glisson ("Glisson"), brings this action against Defendant, Richmond Baking Co. ("Defendant"), for unlawfully violating her rights as protected by the Americans With Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA").

**PARTIES**

2. Glisson has resided within the Southern District of Indiana at all relevant times.

3. Defendant operates and conducts business within the Southern District of Indiana.

**JURISDICTION AND VENUE**

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 42 U.S.C. § 1988; 29 U.S.C. § 2617(a)(2); and 42 U.S.C. § 12117.

5. Glisson was an "employee" within the meaning of 42 U.S.C. § 12111(4) and 29 U.S.C. § 2611(3).

6. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and 29 U.S.C. § 2611(4).

7. Glisson is a qualified individual with a disability, has a record of a disability, and/or was regarded as disabled by Defendant.

8. Between July 1, 2021, to August 10, 2021, Glisson was an "eligible employee" as that term is defined by the FMLA.

9. Glisson had a "serious health condition," as that term is defined by the FMLA.

10. Between January 1, 2020, and December 31, 2021, Defendant employed 50 or more employees within a 75-mile radius of the location at which Glisson worked.

11. Glisson worked 1,250 or more hours in the 12-month period preceding July 1, 2021.

12. Glisson satisfied her obligations to exhaust her administrative remedies, having timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission. The EEOC issued right-to-sue notice to Glisson. She now timely files her lawsuit.

13. Venue is proper in this Court.

## **FACTUAL ALLEGATIONS**

14. Defendant hired Glisson for the position of Packer in or about February 2017.

15. Glisson was a Quality Assurance Technician when Defendant fired her.

16. Glisson's work performance met or exceeded Defendant's legitimate expectations at all relevant times.

17. Glisson has been diagnosed with bipolar disorder, severe depression, generalized anxiety disorder, panic disorder, and chronic post-traumatic stress disorder.

18. Glisson's disability has substantially limited her in several major life activities, including, but not limited to, thinking, concentrating, working, and engaging in social activities.

19. Glisson has been under the care of a doctor for her disabilities for multiple years.

20. Defendant is, and has been, aware of Glisson's disabilities at all relevant times.

21. Glisson applied for intermittent leave under the FMLA in or about April 2020.

22. Glisson's request for intermittent leave constituted a request for a reasonable accommodation under the ADA.

23. Defendant approved Glisson's request for intermittent FMLA leave.

24. Glisson took intermittent leave from in or about April 2020 to in or about August 2021.

25. In or about early July 2021, Family Pride Manager Chad Bond ("Bond") advised Glisson that Defendant was considering only her for the position of Team Lead once her department was fully staffed.

26. Glisson's disabilities flared up on or about July 7, 2021.

27. Despite this flare up, Glisson presented herself at work hoping to overcome the attack.

28. Glisson completed several projects and then texted Supervisor Brittany Black ("Black") that she would be leaving early when Black arrived to work.

29. Glisson's notice to Black constituted a request for a reasonable accommodation.

30. Glisson explained that she was "having an anxiety attack" and felt miserable.

31. Black arrived at work, and Glisson reminded her that she was leaving early because of her disabilities.

32. Glisson informed Black that the mixers were not properly checking the temperatures of the dough because the thermometers remained in the lab.

33. Black asked Glisson to run the thermometers to the mixing floor, to which Glisson responded that she was leaving because of her anxiety attack.

34. Black instructed Glisson to advise Line Supervisor Kris Cunningham ("Cunningham") of the situation.

35. Glisson complied and advised Cunningham of the situation and that she was leaving.

36. Glisson then called to make an emergency appointment with her medical provider.

37. Bond ordered Glisson into his office as she was leaving the building.

38. Bond told Glisson that her decision to leave early was why she would now not be a team lead.

39. Bond informed Glisson that he was aware of her medical issues and that things would not get easier.

40. Glisson told Bond that she would normally stay, but her anxiety was too debilitating that day.

41. Bond advised her that Defendant had to do something about her leaving early because it was "ridiculous and unacceptable."

42. Glisson then told Bond that she was leaving to go to her medical provider.

43. Bond stated: "This is ridiculous. It's always something."

44. Bond issued a written warning to Glisson on or about July 15, 2021.

45. Bond issued the written warning to Glisson in response to her accommodation request to leave early on or about July 7, 2021, because of her disabilities.

46. Defendant denied Glisson's accommodation request without engaging in the interactive process with her. Bond punished her for requesting an accommodation.

47. Glisson took FMLA days on or about July 8 and 28, 2021, and unpaid personal days (for which she was not to receive attendance points per Defendant's policies) on or about July 23, and August 3, 2021.

48. Glisson took the unpaid personal days because of her disabilities.

49. These unpaid personal days should not have been counted against Glisson.

50. Glisson's disabilities became more severe on or about August 6, 2021.

51. Glisson contacted her medical provider to schedule an appointment, which was scheduled for 1:30 p.m. on or about August 10, 2021.

52. Glisson told Black about her appointment and that she would need to leave work early to meet with her doctor.

53. At 5:43 a.m. on or about August 10, 2021, Glisson texted a reminder to Black that she had to leave at 1:00 p.m.

54. Glisson then left work, as planned, at 1:00 p.m. for her appointment.

55. Glisson's notice of her medical appointment constituted a request for a reasonable accommodation.

56. Later that day, Glisson returned to work and presented her doctor's note to Bond, which contained several restrictions. The note provided, in relevant part: "Ms. Glisson was evaluated in the office today for anxiety and sleep disturbances. It is my clinical opinion that patient be off work the remainder of this week. I also recommend patient not work anymore hours than the hours between 5:30 a.m - 2:30 p.m. due to her anxiety and sleep disturbances."

57. Glisson's note constituted a request for a reasonable accommodation.

58. Bond responded by advising Glisson that Defendant would not work with her restrictions because it was effecting the business.

59. Bond demanded to know how Glisson's doctor could put her off work for one week.

60. Bond commented that Glisson's doctor might help her personally but not professionally.

61. Bond noted that he was going to call Glisson's doctor.

62. Bond told Glisson that she had a choice to make: either work without restrictions or be terminated.

63. Bond subsequently told Glisson that Defendant was firing her for "reliability issues."

64. Bond issued a termination notice to Glisson that stated, in relevant part: "It is very important that techs are reliable and be counted to show up to shifts as well as be productive with a good attitude. . .At least a day or more has been missed each week since the first of July."

65. The very days that Bond was referencing were absences relating to Glisson's disabilities.

66. Defendant took adverse employment actions against Glisson because of her disabilities, record of disabilities, its perception of her being disabled, her FMLA absences, her requests for FMLA leave, and/or her statutorily-protected activities.

67. Defendant interfered with Glisson's FMLA rights and retaliated against her for requesting and/or taking FMLA-qualifying leave.

69. Any reason proffered by Defendant for the adverse actions it took against Glisson is pretextual.

70. Glisson has suffered injury as a result of Defendant's unlawful actions, including, but not limited to, lost wages, lost benefits, emotional distress, inconvenience, humiliation, embarrassment, anger, disgust, frustration, and similar emotions as a result of its unlawful acts.

## COUNT I

### DISABILITY DISCRIMINATION – ADA

71. Glisson hereby incorporates paragraphs 1-70 of her Complaint.

72. Glisson asked for a reasonable accommodation.

73. Defendant did not provide a reasonable accommodation to Glisson in or about July and August 2021. Defendant did not engage in the interactive process with Glisson in or about July and August 2021.

74. Instead, Defendant used the requested accommodation against Glisson.

75. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Glisson's rights as protected by the ADA.

## COUNT II

## DISABILITY DISCRIMINATION – ADA

76. Glisson hereby incorporates paragraphs 1-75 of her Complaint.

77. Defendant fired Glisson because of her disability, record of a disability, and/or its perception of her being disabled.

78. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Glisson's rights as protected by the ADA.

## COUNT III

## RETALIATION – ADA

79. Glisson hereby incorporates paragraphs 1-78 of her Complaint.

80. Glisson engaged in statutorily-protected activities.

81. Defendant fired Glisson because of her statutorily-protected activities.

82. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Glisson's rights as protected by the ADA.

## COUNT IV

## VIOLATIONS OF THE FMLA

83. Glisson hereby incorporates paragraphs 1-82 of her Complaint.

84. Glisson asked for FMLA-qualifying leave.

85. Glisson took FMLA-qualifying leave.

86. Defendant fired Glisson because of her FMLA-qualifying leave.

87. Defendant interfered with Glisson's substantive FMLA rights.

88. Defendant fired Glisson because of her FMLA requests and/or FMLA qualifying leaves.

89. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Glisson's FMLA rights.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Sarah Glisson, by counsel, respectfully requests that this Court find for her and order that:

1. Defendant pay lost wages and benefits to Glisson;

2. Defendant reinstate Glisson to the same position, with the requisite pay, seniority, and benefits, or pay front pay and benefits to her in lieu of reinstatement;

3. Defendant pay compensatory and punitive damages to Glisson;

4. Defendant pay liquidated damages to Glisson;

5. Defendant pay pre- and post-judgment interest to Glisson;

6. Defendant pay Glisson's attorneys' fees and costs incurred in litigating this action; and

7.      Defendant pay to Glisson any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

          Respectfully submitted,

          Bradley L. Wilson, Attorney No. 21154-49
          Shannon L. Melton, Attorney No. 29380-49

          Attorneys for Plaintiff
          Sarah Glisson

WILSON MELTON, LLC
5226 South East Street, Suite A-5
Indianapolis, Indiana 46227
Telephone:  (317)802-7181
Email:      bwilson@wilsonmelton.com
            smelton@wilsonmelton.com

## **DEMAND FOR JURY TRIAL**

Plaintiff, Sarah Glisson, by counsel, respectfully requests a jury trial for all issues deemed triable.

          Respectfully submitted,

          Bradley L. Wilson, Attorney No. 21154-49

          Attorneys for Plaintiff
          Sarah Glisson